

Jeff Landry
Attorney General

**State of Louisiana**
DEPARTMENT OF JUSTICE
OFFICE OF THE ATTORNEY GENERAL
P.O. BOX 94005
BATON ROUGE
70804-9005

February 6, 2023

<u>VIA CM/ECF</u>

Lyle W. Cayce
Clerk of Court
United States Court of Appeals
Fifth Circuit
Office Of the Clerk
F. Edward Hebert Building
600 S. Maestri Place
New Orleans, LA 70130-3408

Re:   *Louisiana v. CDC*, No. 22-30303

Dear Mr. Cayce,

    I submit this letter brief on behalf of the State Plaintiff-Appellees ("States") in response to this Court's January 30, 2023 order. The States respectfully submit that this appeal should not be held in abeyance pending resolution of the Supreme Court's decision in *Arizona v. Mayorkas*, No. 22-592.[1] Instead, this Court should direct the parties to submit supplemental briefs once a decision in that case is released for four reasons: (1) the issues in *Arizona v. Mayorkas* have only limited relevance here, (2) Federal Defendants' compliance with notice-and-comment rulemaking requirements is already far too delayed and an abeyance could delay it further, (3) Federal Defendants are improperly attempting to moot this appeal, which an abeyance could facilitate, and (4) resolution of this appeal would provide important precedent for resolving the likely future challenges to the forthcoming third attempted termination of the Title 42 system.

    *First*, the issues presented in *Arizona v. Mayorkas* have only limited relevance to this appeal. True, both cases involve the Title 42 system. But the question presented in *Arizona* is whether the nineteen prospective intervenor States there (all of whom are also Plaintiff States here) were erroneously denied intervention by the D.C. Circuit. The sole question on which the Supreme Court granted review was thus: "Whether the State applicants may intervene to challenge

---

[1] The State of Arizona concurs in this recommendation but expresses no opinion on the remainder of this letter brief.

the District Court's summary judgment order." *Arizona v. Mayorkas*, 143 S. Ct. 478 (2022).

The D.C. Circuit denied the States' motion to intervene purely on timeliness grounds. *See Arizona* Joint Appendix at 1-7.[2] No such timeliness issues are presented here, however: the Federal Defendants issued the challenged Termination Order on April 1, 2022, and the States challenged it two days later on Sunday April 3, 2022. ROA.97. Federal Defendants have never questioned the timeliness of this action.

Nor are the other requirements for intervention likely to play a significant role in this appeal. The adequacy of Federal Defendants' representation of the States' interests in *Arizona* has little relevance here to Federal Defendants' appeal. Unlike *Arizona*, the States' and Federal Defendants' interests are concededly directly adverse to each other.[3]

The sole issue in *Arizona* with any meaningful chance of implicating the principal issues here is whether the States possess protectable interests in the potential termination of the Title 42 system, including whether they have Article III standing to challenge that termination. But resolution of that issue is straightforward under this Court's precedents addressing State standing *specifically* in the immigration context,[4] as well as the Supreme Court's decisions in *Department of Commerce v. New York*, 139 S. Ct. 2551 (2019) and *Massachusetts v. EPA*, 549 U.S. 497 (2007). *See generally* Answering Br.27-41. The district court properly held that the States have standing under these existing precedents, and Defendants' standing arguments are plainly irreconcilable with those decisions. *See* Answering Br.30-31, 33-34, 36-37.

To the extent that the Supreme Court might overturn or radically change these venerable precedents—which is distinctly unlikely—that could be addressed through supplemental briefing. But even significant changes to standing doctrines might matter little here, since Federal Defendants refused to challenge even *one* of the district court's factual findings underlying its Article III standing holding as clearly erroneous—thereby conceding factual causation. *See* Answering Br.28-31. And since "Article III 'requires no more than *de facto* causality.'" *New York*, 139 S. Ct. at 2566 (2019) (citation omitted), those forfeitures largely concede Article III traceability here too even without double relaxation of ordinary standing

---

[2] *Available at* https://bit.ly/3l311e5.

[3] Resolution of this issue could implicate Law Labs' appeal, although Law Labs separately lacks a protectable interest and its arguments about the scope of injunctive relief fail on the merits in any event. *See* Answering Br.91-99.

[4] *See, e.g., Texas v. United States*, 809 F.3d 134 (5th Cir. 2015) *aff'd by an equally divided court* 579 U.S. 547 (2016); *Texas v. Biden*, 20 F.4th 928 (5th Cir. 2021) *rev'd on other grounds Biden v. Texas*, 142 S. Ct. 2528 (2022); *Texas v. United States*, 40 F.4th 205 (5th Cir.) *cert. before judgment granted* 143 S.Ct. 51 (2022).

requirements that applies here. *See* Answering Br.28-41. Unless that traceability holding of *New York* is overruled, Federal Defendants' failure to challenge any of the district court's factual findings will remain fatal to their traceability-only Article III standing arguments. *See id.* at 28-29.

Notably, standing is only one of a litany of arguments that Federal Defendants have advanced to this Court, and their standing arguments comprise only about 10% of their Opening Brief (pages 20-25) and 15% of their argument section. The *vast* majority of issues presented here—*e.g.*, prudential standing, the committed-to-agency-discretion exception to judicial review, the good cause and foreign affairs exceptions to the APA's notice-and-comment rulemaking exceptions, whether Defendants were required to consider immigration consequences in their rulemaking, the adequacy of Defendants' consideration of State reliance interests and alternatives, and the district court's equitable balancing—will not even conceivably be affected by the Supreme Court's resolution of the intervention issues presented in *Arizona v. Mayorkas*.

*Second*, an abeyance could further delay Federal Defendants' already woefully overdue compliance with requirements of the APA. The district court held that Federal Defendants had likely violated the APA in issuing the April 1, 2022 Termination Order without complying with notice-and-comment rulemaking procedures on May 13, 2022—nearly nine months ago—and issued an injunction on that basis. *Louisiana v. CDC*, 603 F. Supp. 3d 406, 433-38 (W.D. La. 2022). But Federal Defendants' efforts to comply with that injunction by undertaking notice-and-comment rulemaking are moving glacially at best.

Federal Defendants are in no apparent hurry either to remedy that APA violation or obtain relief from that injunction. Federal Defendants did not seek a stay pending appeal, and in fact opposed Proposed Intervenors' request for partial stay. Nor did Federal Defendants seek to expedite this appeal. They did, however, seek and obtain a stay of district court proceedings over the States' objection, thereby precluding any possibility of the district court's preliminary injunction expiring through final adjudication of the merits.

Nor have Federal Defendants used this period to comply with notice-and-comment requirements. Until recently, there was no indication at all that CDC intended to undergo notice-and-comment rulemaking to terminate the Title 42 system—even though it did so when creating that system. 85 Fed. Reg. 56,424 (Sept. 11, 2020).

Only after the States sought to intervene in the action underlying the *Arizona* case (*Huisha-Huisha*, No. 21-100 (D.D.C. filed January 12, 2021)) did CDC signal any intent to perform notice-and-comment rulemaking. Specifically, the U.S. District Court for the District of Columbia ("DDC") held that the Title 42 system

was illegal for the second time[5] on November 15, 2022. *Huisha-Huisha v. Mayorkas*, No. CV 21-100 (EGS), 2022 WL 16948610 (D.D.C. Nov. 15, 2022), *cert. and stay granted* 143 S. Ct. 478 (2022). Within hours of that decision, Federal Defendants signaled they intended to acquiesce in that vacatur and nationwide injunction and reached an agreement to do so with Plaintiffs just hours after that decision. *See Arizona* Joint Appendix at 213-17.

In doing so, Federal Defendants attempted to surrender their way to victory: by acquiescing in their defeat in DDC, they sought to obtain through collusion what had escaped them through rulemaking and litigating in *this case*: repeal of the Title 42 system without the hassle of complying with the APA's notice-and-comment rulemaking requirements.

Six days later on November 21, the States moved to intervene to pick up the defense of the Title 42 system that Federal Defendants had abandoned. If granted, the States' motion to intervene would thwart Federal Defendants' attempted victory-through-surrender ploy.

Only after that motion to intervene was fully briefed did Federal Defendants decide to appeal DDC's injunction and vacatur. It did so on December 7. In a notice accompanying that appeal, Federal Defendants indicated HHS and CDC "have decided to undertake notice-and-comment rulemaking to replace 42 C.F.R. § 71.40" and therefore "intend[] to move the D.C. Circuit to hold the appeal in abeyance pending (i) the Fifth Circuit's decision in *Louisiana v. CDC*, No. 22-30303 (5th Cir.), the government's appeal of the preliminary injunction enjoining implementation of CDC's April 1, 2022 Termination Order, and (ii) the forthcoming rulemaking to replace § 71.40." *Arizona* Joint Appendix at 219. (The D.C. Circuit has granted a request to hold the Federal Defendants' appeal in abeyance pending resolution of *Arizona v. Mayorkas*.)

But even now, nearly two months later after that notice, no proposed rule has issued and no comments have been solicited. By all appearances, Federal Defendants are scarcely closer to complying with the APA's notice-and-comment requirements now than when the district court held that they were required to do so on May 20, 2022. *Louisiana*, 603 F. Supp. 3d at 443-39.

In short, Federal Defendants do not appear to be in any hurry to conduct notice-and-comment rulemaking while this appeal is still pending, and may act with even less urgency if this appeal is held in abeyance.

*Third*, Federal Defendants appear to be attempting to moot this appeal unlawfully—an effort that an abeyance could aid. Specifically, on January 30, 2023,

---

[5] The district court's first holding to that effect on statutory grounds was quickly stayed by the D.C. Circuit before being reversed unanimously. *Huisha-Huisha v. Mayorkas*, 27 F.4th 718 (D.C. Cir. 2022).

the Executive Office of the President announced that the Administration would "extend the [COVID-19 public health] emergency declaration[] to May 11, and then end both emergencies on that date." *See* Statement of Administration Policy at 1, https://www.whitehouse.gov/wp-content/uploads/2023/01/SAP-H.R.-382-H.J.-Res.-7.pdf (Jan. 30, 2023). In the Administration's view, "the end of the public health emergency will end the Title 42 policy at the border." *Id.* at 2. If the Administration is correct about the legal operation of that proposed action, it would moot this action and appeal.

Because the public health emergency declaration is set to expire on April 11, it will need to be extended a final time prior to that date to effectuate a May 11 expiration date. *Id.* at 1-2. It does not appear that the Administration contemplates any compliance with notice-and-comment procedures or satisfying any other rulemaking requirements of the APA in providing for that termination of the public health emergency and resulting termination of Title 42. *Id.*

The Administration's announced policy as to Title 42 is thus likely illegal, and one or more States are likely to challenge it. Throughout this litigation, the States' position has been consistent: Federal Defendants can rely on improvements in the COVID-19 pandemic to terminate Title 42 *as long as they comply with the APA in doing so*. In particular, as the States have repeatedly argued, APA compliance here requires: (1) conducting notice-and-comment rulemaking, (2) considering the immigration impacts of termination, (3) evaluating the reliance interests of States and the costs imposed on them, and (4) adequately considering the various alternatives as to how the Title 42 System can be wound down. *See also* Answering Br.54-86.

It appears, however, that Federal Defendants do not intend to comply with *any* of these requirements in this announced attempt to terminate Title 42 on May 11, 2023. The timing alone would preclude any notice-and-comment rulemaking. And the Administration continues to argue that it can ignore immigration consequences in exercising its statutory authority under 42 U.S.C. § 265 (the statutory basis for the Title 42 system). *See, e.g.*, Opening Br.26-27, 37-38, 45-46. Nor does it appear that there will be any new rulemaking would address the other deficiencies identified by the States. *See generally* Answering Br.54-86.

The Administration's announced plans notably would represent its *third* attempt to circumvent core APA requirements, such as notice-and-comment rulemaking. The first was the April 1, 2022 Termination Order, which the district court enjoined and whose injunction is on appeal here. The second was Federal Defendants' attempt to employ the "tactic of 'rulemaking-by-collective-acquiescence.'" *Arizona v. San Francisco*, 142 S. Ct. 1926, 1928 (2022) (Roberts, C.J., concurring) (citation omitted)—a collusive attempt that the Supreme Court properly stayed in *Arizona v. Mayorkas*, 143 S. Ct. at 478. In addition, Federal Defendants have engaged in other improper conduct, such as prematurely and

unlawfully implementing the Termination Order more than a month before its effective date—thereby forcing the States to seek and obtain a temporary restraining order. *See* Answering Br.16-17, 81-82, 90.

Undaunted by the stays/injunctions/temporary restraining orders against their first two attempts to circumvent the APA, Federal Defendants are now attempting a *third* end-run around bedrock requirements of administrative law. At this point, it is fair to wonder whether the resources that the Administration has invested in its multitudinous efforts to evade the APA would *alone* have been sufficient to satisfy the APA's notice-and-comment and reasoned decision-making requirements—*if* allocated to APA compliance rather than evasion. But that is not the path Federal Defendants have chosen. And so it may again fall to the States to challenge the repeated APA violations that Defendants' actions in attempting to terminate the Title 42 system already have—and apparently will again—occasion.

*Fourth*, and relatedly, this Court's resolution of the issues presented could provide important precedent for the forthcoming and inevitable challenge to Federal Defendants' latest (and third) attempt to terminate the Title 42 System without complying with APA mandates, including notice-and-comment rulemaking. Given the importance of the issues presented, and the likelihood of them recurring, an abeyance is unwarranted.

                                            Sincerely,

                                            <u>s/ Drew C. Ensign</u>
                                            Drew C. Ensign
                                            Louisiana Special Assistant Solicitor General
                                            Counsel for State Plaintiffs

Word Count: 2,225 words