No. 22-30303

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

---

STATE OF LOUISIANA; STATE OF ARIZONA; STATE OF MISSOURI; STATE OF WEST VIRGINIA; STATE OF SOUTH CAROLINA, *et al.*,

*Plaintiffs-Appellees,*

v.

CENTERS FOR DISEASE CONTROL AND PREVENTION; ROCHELLE WALENSKY; UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; XAVIER BECERRA; UNITED STATES DEPARTMENT OF HOMELAND SECURITY, *et al.*,

*Defendants-Appellants,*

v.

INNOVATION LAW LAB,

*Movant-Appellant.*

---

# FEDERAL GOVERNMENT'S MOTION TO VACATE THE PRELIMINARY INJUNCTION AND REMAND WITH INSTRUCTIONS TO DISMISS AS MOOT

---

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney General*

SARAH E. HARRINGTON
*Deputy Assistant Attorney General*

BRANDON B. BROWN
*United States Attorney*

SHARON SWINGLE
JOSHUA DOS SANTOS
*Attorneys, Appellate Staff*
*Civil Division, Room 7224*
*U.S. Department of Justice*
*950 Pennsylvania Ave., NW*
*Washington, DC 20530*
*202-353-0213*

**INTRODUCTION**

The federal government respectfully moves to vacate the district court's preliminary injunction and remand with instructions to dismiss the case as moot. This case concerns challenges to an April 1, 2022 order by the Centers for Disease Control and Prevention (CDC) that terminated a "Title 42" emergency order. Title 42 orders temporarily suspended the right of introduction into the United States for certain noncitizens due to a serious public health danger arising from COVID-19. Pursuant to these orders, covered noncitizens were expelled rather than processed under Title 8 of the U.S. Code. The plaintiff States alleged that CDC's April 1, 2022 termination of the Title 42 order violated procedural requirements in the Administrative Procedure Act (APA), and the district court entered a preliminary injunction barring the federal government from enforcing CDC's termination order. These consolidated appeals followed.

The preliminary injunction and the States' challenges to the termination order have now become moot. Regardless of whether CDC's termination order was procedurally improper as the States allege, the last operative Title 42 order by its terms ends upon expiration of the Secretary of Health and Human Services' declaration of COVID-19 as a public health emergency under 42 U.S.C. § 247d. This Court therefore placed this case in abeyance until May 11, 2023, when the Secretary's public health emergency declaration was expected to expire. Yesterday, on May 11, 2023, the Secretary's emergency declaration for COVID-19 expired as expected. Upon that

expiration, the Title 42 order ended by operation of law, independently of the termination order that is challenged in this case and that was enjoined by the district court's preliminary injunction. As of May 12, 2023, the government has resumed full immigration processing of all noncitizens under Title 8 authorities. The State's claims of alleged procedural deficiencies in the April 1, 2022 termination order are thus moot and the preliminary injunction has no effect. The Court should accordingly vacate the preliminary injunction and remand with instructions to dismiss the case as moot.

## STATEMENT

1. This case concerns the termination of "Title 42" emergency orders issued by CDC pursuant to its public health authority in 42 U.S.C. § 265. CDC's Title 42 orders suspended the right to introduce into the United States certain noncitizens entering from Mexico and Canada (generally those noncitizens without valid travel documents). *See* 87 Fed. Reg. 19,941, 19,943 (Apr. 6, 2022). Noncitizens covered by Title 42 orders were expelled without being processed under the immigration authorities that would otherwise apply pursuant to Title 8 of the U.S. Code.

CDC adopted the first Title 42 order in March 2020 because of a serious public health danger arising from the spread of COVID-19 in congregate settings at U.S. Ports of Entry and U.S. Border Patrol stations and the lack of available and effective mitigation measures to address that danger. *See* 87 Fed. Reg. at 19,943. CDC subsequently issued several more Title 42 orders, each time requiring a reevaluation of

the public health need for the emergency order every 30 or 60 days. *Id.* at 19,942, 19,953.

CDC's last Title 42 order, issued in August 2021, stated that it would "remain effective" until either of two triggering events, "whichever occurs first": (a) "the expiration of the Secretary of [Health and Human Services]' declaration that COVID-19 constitutes a public health emergency," or (b) a determination by the CDC Director that "the danger of further introduction of COVID-19 into the United States has declined such that continuation of the Order is no longer necessary to protect public health." 86 Fed. Reg. 42,828, 42,830, 42,841 (Aug. 5, 2021).

The referenced public health emergency declaration by the Secretary is authorized under 42 U.S.C. § 247d, and by statute expires after 90 days unless renewed. 42 U.S.C. § 247d(a). The Secretary first declared COVID-19 a public health emergency in January 2020 and periodically renewed the declaration after assessing current public health conditions. 86 Fed. Reg. at 42,831 & n.21. The declaration has had numerous legal consequences unrelated to Title 42 orders, including authorization to expend additional funds under various programs and to waive or modify certain requirements under the Medicare, Medicaid, and Children's Health Insurance Programs to ensure access to care. *See* 42 U.S.C. §§ 247d(b)-(f), 1320b-5; Pub. L. No. 116-127, §§ 1101, 2301, 2302, 3102, 6008, 134 Stat. 178, 179-180, 187-191, 208-209 (2020). Various other emergency orders have also been contingent on the existence of such a public health emergency declaration. *See* 85 Fed. Reg. 44,085, 44,086 (July

21, 2020) (No Sail Order); 86 Fed. Reg. 8025, 8030 (Feb. 3, 2021) (transportation masking order).

2. On April 1, 2022, after a 60-day review, the CDC Director determined that the Title 42 order was no longer "required in the interest of the public health," 42 U.S.C. § 265, in light of the status of the COVID-19 pandemic in the United States at that time and the availability of effective mitigation measures. *See* 87 Fed. Reg. at 19,941, 19,948-54. CDC therefore terminated the order, effective on May 23, 2022. *See id.* at 19,956.

The plaintiff States challenged the termination order under the APA. The States argued that CDC was required to undergo notice and comment to terminate these emergency public health orders because neither the good-cause nor foreign-affairs exceptions to notice-and-comment rulemaking applied under the circumstances of this case. The States also argued that CDC failed to reasonably consider reliance interests or the costs that increased immigration creates for the States. ROA.128-37. Proposed intervenor Innovation Law Lab thereafter filed a motion for limited intervention in support of CDC's termination order. *See* Gov't Br. 13.

The district court denied intervention and issued a preliminary injunction barring the federal government from enforcing CDC's termination order based on the States' notice-and-comment claim. *See* Gov't Br. 14-16. The government and proposed intervenor filed these appeals, which this Court consolidated.

4

3.  While this litigation has been pending, the district court for the District of Columbia vacated all prior Title 42 orders and permanently enjoined the government from applying Title 42 orders to a class of family units. *Huisha-Huisha v. Mayorkas*, No. 21-cv-100, 2022 WL 16948610, at *16 (D.D.C. Nov. 15, 2022). The government appealed and some of the State plaintiffs in this case unsuccessfully sought intervention on appeal. The Supreme Court thereafter issued a stay of the vacatur and injunction in that case, granted certiorari on the question of intervention, and scheduled argument for March 2023. *See* Gov't Suppl. Br. 4-6.

4.  During this time, the Secretary had continued to renew the declaration of COVID-19 as a public health emergency, thus continuing to authorize a number of other measures to address the pandemic. A House Bill and resolution were subsequently introduced to terminate the public health emergency and a separate COVID-19 national emergency declared by the President. On January 30, 2023, the Office of Management and Budget (OMB) issued a statement opposing the bill and resolution, but announcing that "[a]t present, the Administration's plan is to extend the emergency declarations to May 11," after which the declarations would expire. OMB, *Statement of Administration Policy* 1 (Jan. 30, 2023), https://perma.cc/FE83-MXDE (OMB Statement).

5.  On January 30, 2023, this Court requested supplemental briefs addressing the propriety of abeyance in light of the *Huisha-Huisha* case. The government's supplemental brief explained that abeyance was appropriate because of the likelihood

that the Secretary's public health emergency declaration would expire on May 11, 2023 and moot this case. *See* Gov't Suppl. Br. 7-9. This Court placed the case in abeyance until May 11, 2023.

The government likewise informed the Supreme Court that the expiration of the public health emergency declaration would moot the *Huisha-Huisha* case, and that in that event the government would seek vacatur of the district court's order in that case. Brief for the Federal Respondents at 12, *Arizona v. Mayorkas*, No. 22-592 (U.S. Feb. 7, 2023). The Supreme Court thereafter removed the case from the oral argument calendar.

6. Since that time, other emergency declarations related to COVID-19 have ended in light of changed circumstances. The Federal Emergency Management Agency announced that "all COVID-19 major disaster declarations … will close effective May 11, 2023." 88 Fed. Reg. 8884 (Feb. 10, 2023). On April 10, 2023, the President signed a joint Congressional resolution terminating the separate declaration of a national emergency related to COVID-19 pursuant to 50 U.S.C. § 1622, which had been in place since March 2020. *See* Pub L. No. 118-3, 137 Stat. 6 (2023). On May 5, 2023, the World Health Organization ended its declaration of COVID-19 as a global public health emergency. World Health Org., *Statement on the Fifteenth Meeting of the International Health Regulations (2005) Emergency Committee Regarding the Coronavirus Disease (COVID-19) Pandemic* (May 5, 2023), https://perma.cc/6HC7-XPNU.

The federal government has also taken numerous steps in preparation for the end of the Secretary's public health emergency declaration.  *See, e.g.*, Circumvention of Lawful Pathways, 88 Fed. Reg. 11,704 (Feb. 23, 2023); U.S. Dep't of State, *U.S. Government Announces Sweeping New Actions to Manage Regional Migration* (Apr. 27, 2023), https://www.state.gov/u-s-government-announces-sweeping-new-actions-to-manage-regional-migration.

7.  On May 11, 2023, the Secretary's declaration of COVID-19 as a public health emergency expired, which caused CDC's remaining Title 42 order to likewise expire by its terms.  On May 12, 2023, the government began processing noncitizens under Title 8 of the U.S. Code.[1]

## ARGUMENT

1.  This case is moot.  This suit alleges procedural violations in CDC's April 1, 2022 termination of its Title 42 order.  But the expiration of the Secretary of Health and Human Services' declaration of COVID-19 as a public health emergency has caused CDC's last operative Title 42 order to expire by its own terms, independently

---

[1] Not all COVID-19 measures contained terms stating that the measures would end upon expiration of the Secretary's public health emergency declaration.  The declaration's expiration did not automatically end policies that did not contain such terms, but consistent with the expiration, the Administration has taken steps necessary to terminate the vaccine requirements for federal contractors, federal employees, international air travelers, Head Start educators, CMS-certified healthcare facilities, and certain noncitizens at the land border.  *See* White House, *The Biden-Harris Administration Will End COVID-19 Vaccination Requirements for Federal Employees, Contractors, International Travelers, Head Start Educators, and CMS-Certified Facilities* (May 1, 2023), https://perma.cc/38B6-LR9E.

of the termination order. *See* 86 Fed. Reg. at 42,829, 42,841. This development means that the challenged termination order and the preliminary injunction against it no longer have any concrete effect on the parties, and resolution of the parties' dispute regarding the lawfulness of CDC's termination order no longer matters.

As a result, this case no longer presents a "live case[] or controvers[y]," *Spell v. Edwards*, 962 F.3d 175, 179 (5th Cir. 2020), and it is now "impossible for the court to grant any effectual relief whatever to a prevailing party," *Motient Corp. v. Dondero*, 529 F.3d 532, 537 (5th Cir. 2008). Because "an intervening circumstance" has deprived "plaintiff[s] of a 'personal stake in the outcome of the lawsuit,'" the case "must be dismissed as moot." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 72 (2013); *Spencer v. Kemna*, 523 U.S. 1, 18 (1998) (Federal courts "are not in the business of pronouncing that past actions which have no demonstrable continuing effect were right or wrong.").

No exception to mootness applies here. The narrow exception for cases capable of repetition yet evading review applies only when "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Spencer*, 523 U.S. at 17 (brackets and quotation marks omitted). Plaintiffs cannot meet their burden to establish either requirement. *See, e.g., Empower Texans, Inc. v. Geren*, 977 F.3d 367, 370 (5th Cir. 2020). The States' challenge concerns the application of the good-cause and foreign-affairs exceptions to notice-

and-comment rulemaking based on the circumstances of CDC's termination of its Title 42 emergency order, as well as whether CDC adequately considered reliance interests. There is no reasonable likelihood that this fact-specific dispute will repeat itself, nor that CDC will issue and then terminate another Title 42 emergency order affecting processing at the border because of a serious public health danger arising from a communicable disease. *See, e.g.*, *Spell*, 962 F.3d at 180 (holding that challenge to an expired COVID-19 stay-at-home order was not capable of repetition yet evading review because it was "speculative, at best" that a similar order raising the same issues would recur); *County of Butler v. Governor of Pennsylvania*, 8 F.4th 226, 230-31 (3d Cir. 2021) (similar); *Brach v. Newsom*, 38 F.4th 6, 15 (9th Cir. 2022) (similar); *Resurrection Sch. v. Hertel*, 35 F.4th 524, 530 (6th Cir. 2022) (similar). And as the length of this litigation shows, there is also no reason why such a dispute necessarily would be likely to become moot before judicial review.

The exception for voluntary cessation also does not apply. This Court "assume[s] that formally announced changes to official governmental policy are not mere litigation posturing" and are entitled to a "presumption of good faith." *Yarls v. Bunton*, 905 F.3d 905, 911 (5th Cir. 2018) (quoting *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 325 (5th Cir. 2009)). For that reason, formal changes to government policy generally "overcome[] concerns of voluntary cessation," *Amawi v. Paxton*, 956 F.3d 816, 821 (5th Cir. 2020), and "the government's ability to reimplement the statute or regulation at issue is insufficient to prove the voluntary-cessation

exception," *Freedom From Religion Found., Inc. v. Abbott*, 58 F.4th 824, 833 (5th Cir. 2023).

Moreover, mootness in this case resulted from a fundamental change in public health conditions, as evidenced by Congress's passage of legislation ending the President's separate declaration of a national emergency.  As explained, the relevant statute requires the Secretary's declarations of a public health emergency to expire after 90 days unless renewed.  42 U.S.C. § 247d(a).  The Secretary had renewed the declaration of COVID-19 as a public health emergency throughout the pandemic based on an assessment of the public health circumstances, and the declaration had numerous effects independent of this litigation, including authorization to expend additional funds and waiver of certain healthcare program requirements.  After a bill to end the declaration was introduced in Congress, the government explained that the Secretary was planning not to renew the declaration past May 11, 2023.  *See* OMB Statement 1.  Several other COVID-19 emergency declarations have similarly ended recently in light of changed public health circumstances.  The Secretary's declaration then expired on May 11, by operation of the statute.

Alongside numerous other effects, that expiration incidentally ended CDC's Title 42 order and other emergency orders, rendering CDC's April 1, 2022 termination order irrelevant.  That does not constitute voluntary cessation.  *See, e.g.*, *Spell*, 962 F.3d at 179 (holding that a policy "that expires by its own terms does not implicate" voluntary cessation); *Brach*, 38 F.4th at 14-15 (noting that voluntary

cessation exception does not apply to end of emergency COVID-19 orders that "expire[d] by their own terms" based on changed public health circumstances, and citing cases); *County of Butler*, 8 F.4th at 230-31(same); *Boston Bit Labs, Inc. v. Baker*, 11 F.4th 3, 10 (1st Cir. 2021) (voluntary cessation exception did not apply to rescinded COVID-19 emergency order); *Eden, LLC v. Justice*, 36 F.4th 166, 171 (4th Cir. 2022) (same and citing cases); *Trump v. Hawaii*, 138 S. Ct. 377 (2017) (holding case moot when the policy "expired" by its "own terms").

2.  Because this case and the preliminary injunction are moot, the Court should vacate the preliminary injunction and remand with instructions to dismiss the case as moot.  While the question whether to vacate a lower court order after mootness is equitable and case-specific, the Supreme Court has stated that the "ordinary practice" is to vacate lower court decisions when a case becomes moot on appeal.  *Alvarez v. Smith*, 558 U.S. 87, 94, 97 (2009); *University of Tex. v. Camenisch*, 451 U.S. 390, 394 (1981); *United States v. Munsingwear, Inc.*, 340 U.S. 36, 39 (1950).  Accordingly, "[i]f the parties lack a legally cognizable interest in the determination whether the preliminary injunction was properly granted," courts "must vacate the district court's order and remand the case."  *Camenisch*, 451 U.S. at 394; *Freedom From Religion Found.*, 58 F.4th at 837 ("[A]n injunction is meaningless if there remains no live controversy between the parties." (quotation marks omitted)).

Following these principles, this Court frequently vacates injunctions that prohibit enforcement of a policy that has changed or been superseded by events

broader than the litigation. *See Spell*, 962 F.3d at 178-80 (vacating order denying preliminary injunction in case concerning COVID-19 stay-at-home orders that had since expired); *Amawi*, 956 F.3d at 822 (vacating preliminary injunction after an amended Texas law rendered the case moot and remanding with instructions to dismiss); *DeMoss v. Crain*, 636 F.3d 145, 151 (5th Cir. 2011) (per curiam) (vacating district court's ruling on challenged prison policy's legality because policy had been rescinded during the litigation); *Log Cabin Republicans v. United States*, 658 F.3d 1162, 1166-68 (9th Cir. 2011) (per curiam) (vacating the district court's judgment after policy became moot); *cf. Franciscan All., Inc. v. Becerra*, 47 F.4th 368, 375-76 (5th Cir. 2022) (declining to vacate injunction of rescinded rule after concluding that unusual circumstances created a serious risk that the plaintiffs would be subject to a similar policy).

The Supreme Court likewise routinely vacates orders when mootness resulted from a change in policy for reasons unrelated to the litigation. *See Alvarez*, 558 U.S. at 96-97 (vacating judgment when State returned property for reasons unrelated to the plaintiff's due-process suit); *Board of Regents of Univ. of Tex. Sys. v. New Left Educ. Project*, 414 U.S. 807 (1973) (reversing denial of vacatur and vacating injunction after a state university repealed the challenged rules for good-faith reasons); *see also Mayorkas v. Innovation Law Lab*, 141 S. Ct. 2842 (2021) (vacating preliminary injunction after policy change resulting from new assessment of the public interest); *Yellen v. U.S. House of Representatives*, 142 S. Ct. 332 (2021) (same); *United States v. Microsoft Corp.*, 138 S. Ct.

1186, 1187-88 (2018) (per curiam) (vacating lower-court decision when intervening change in federal law rendered review of that decision moot); *U.S. Dep't of Treasury, Bureau of Alcohol, Tobacco & Firearms v. Galioto*, 477 U.S. 556, 560 (1986) (vacating district court judgment after statutory amendment resulting in mootness); *cf. Biden v. Sierra Club*, 142 S. Ct. 46 (2021) (vacating judgment due to policy change resulting in changed circumstances). As a leading treatise has explained, vacatur in such circumstances is equitable to ensure that the government (and other parties) would not be "deterred" from taking "good faith" actions that incidentally moot a case, merely to avoid "the prospect that" "an erroneous district court decision may have untoward consequences in the unforeseen future." 13C Charles Alan Wright et al., *Federal Practice and Procedure* § 3533.10.1 (3d ed.).[2]

---

[2] In *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership*, 513 U.S. 18 (1994), the Supreme Court explained that a litigant may "voluntarily forfeit[]" the remedy of vacatur through settlement, *id.* at 25, but that result does not follow when a litigant causes mootness for reasons unrelated to the litigation, which the Supreme Court has held can "more closely resemble[] mootness through happenstance," *Alvarez*, 558 U.S. at 87 (quotation marks omitted); *e.g.*, *Innovation Law Lab*, 141 S. Ct. at 2842. This Court has sometimes used broad language to describe the Supreme Court's holding in *Bancorp*, *see, e.g.*, *Franciscan All.*, 47 F.4th at 375-76, but consistent with the Supreme Court's precedent, the Court has explained that vacatur is assessed "on a case-by-case basis" rather than by "inflexible rules," and "[w]hether a party's voluntary conduct was not done with specific intent to moot the case is certainly one factor we may consider," *Staley v. Harris County*, 485 F.3d 305, 310, 312 (5th Cir. 2007); *Freedom From Religion Found.*, 58 F.4th at 836 (similar). In any event, mootness in this case resulted from expiration of the public health emergency declaration due to changed public health circumstances, not from actions taken by defendants.

Here, the case became moot before the government could obtain appellate review because of the expiration of a broader public health emergency declaration based on changed public health circumstances.  Indeed, the propriety of vacatur is especially clear in this case, since mootness resulted from the automatic expiration of the public health emergency declaration by statute due to changed public health circumstances, rather than any action by defendants.  *See Trump*, 138 S. Ct. 377 (vacating judgment when the policy "expired" by its "own terms"); *Spell*, 962 F.3d at 179-80 (vacating order denying preliminary relief after a COVID-19 policy "expire[d] by its own terms" based on changed public health circumstances); *Brach*, 38 F.4th at 14-15 (instructing the district court to vacate its judgment after challenged COVID-19 order expired because of changed circumstances); *County of Butler*, 8 F.4th at 232 (vacating judgment when "challenged [COVID-19] orders expired by their own terms" because of changed circumstances).  The Court should accordingly vacate the moot preliminary injunction and remand with instructions to dismiss the case as moot.

3.  The federal government has consulted with counsel for plaintiffs and proposed intervenor.

The Plaintiff States, except for Arizona, oppose both the request for dismissal and vacatur.  Arizona takes no position on either request.

Proposed Intervenor Innovation Law Lab agrees that the expiration of the Title 42 order merits vacatur of the injunction and moots this case.  However, in light

of Plaintiff States' opposition to dismissal, Proposed Intervenor objects to the dismissal of its appeal of the district court's order denying its motion to intervene, so that it may protect its rights in the event that the underlying case continues.

## CONCLUSION

The Court should vacate the preliminary injunction and remand with instructions to dismiss the case as moot.

Respectfully submitted,

BRIAN M. BOYNTON
  *Principal Deputy Assistant Attorney General*

SARAH E. HARRINGTON
  *Deputy Assistant Attorney General*

SHARON SWINGLE
  */s/ Joshua Dos Santos*
JOSHUA DOS SANTOS
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7224*
  *U.S. Department of Justice*
  *950 Pennsylvania Ave., NW*
  *Washington, DC 20530*
  *202-353-0213*

MAY 2023

**CERTIFICATE OF SERVICE**

I hereby certify that, on May 12, 2023, I electronically filed the foregoing motion with the Clerk of the Court by using the appellate CM/ECF system. I further certify that the participants in the case are CM/ECF users and that service will be accomplished by using the appellate CM/ECF system.

                                              */s/ Joshua Dos Santos*
                                              JOSHUA DOS SANTOS
                                              Counsel for Appellants

## CERTIFICATE OF COMPLIANCE

I hereby certify that this motion complies with the requirements of Federal Rule of Appellate Procedure 27(d) because it has been prepared in 14-point Garamond, a proportionally spaced font.  I further certify that this motion complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2) because it contains 3,627 words according to the count of Microsoft Word.

*/s/ Joshua Dos Santos*
JOSHUA DOS SANTOS
Counsel for Appellants